IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

JOSEPH LOGAN, Personal Representative )
of the Estate of Ralph Logan, Deceased, )
and LOIS LOGAN, )
 )
        Plaintiffs, )
 )
        v. )      1:12-CV-1353
 )
AIR PRODUCTS AND CHEMICALS, )
INC., et al., )
 )
        Defendants. )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

Ralph Logan worked at a Getty oil refinery in Delaware for thirty years where he was exposed to asbestos on a regular basis. The moving defendants either sold asbestos-containing products used at the refinery or provided workers who undertook tasks that resulted in asbestos exposure to those working nearby. Mr. Logan later developed mesothelioma, a disease caused by asbestos exposure, and passed away. With one exception, the evidence gives rise to disputed questions of fact about liability of the moving defendants under the "frequency, regularity, and exposure" test, and the Court will deny the motions for summary judgment in large part.

### Background

The facts as stated are either undisputed or viewed in the light most favorable to the plaintiffs, the non-moving party.[1] Mr. Logan, the plaintiffs' decedent, worked as a maintenance supervisor at a Getty oil refinery in Delaware from 1956 to 1986. (Doc. 127-1 at 4-5.) During

---

[1] Docket references are to the docket number and page number appended by the CM-ECF system, not the page numbers of the original documents.

that time, defendant Air Products' predecessor, Catalytic, Inc., was a contractor responsible for hiring skilled workers, including pipe fitters and insulators, to work at the refinery. (*Id.* at 4, 33.) Defendant Crane Company manufactured and supplied valves containing asbestos gaskets and packing to the refinery. (*Id.* at 16.) Defendant Ingersoll-Rand manufactured and supplied compressors, which contained asbestos gaskets and packing, used at the refinery. (*Id.* at 23-28.)

In 2012, Mr. Logan was diagnosed with mesothelioma, a cancer caused by exposure to asbestos, which later caused his death. The plaintiffs allege personal injury and wrongful death claims arising from Mr. Logan's exposure to asbestos-containing products, materials, or equipment at the Getty refinery. (*See* Doc. 73.) They assert the following causes of action: negligence, gross negligence, wrongful death, and loss of consortium against all of the moving defendants; breach of implied warranty, fraud, and failure to warn against all of the moving defendants except for Air Products; and negligent hiring, training, and/or supervision against Air Products, individually and as successor to Catalytic, Inc. (*See id.*)

**Overview of Issues**

Defendants Air Products and Chemicals, Inc.,[2] Crane Company, and Ingersoll-Rand Company have filed motions for summary judgment.[3] Summary judgment is appropriate when

---

[2] Air Products has filed two summary judgment motions. One motion is directed towards the potential liability of Air Products based on the conduct of Catalytic, a company with which Air Products merged at some point, which the Court will reference as "Air Products as successor to Catalytic." (*See* Doc. 125.) The other is based on its potential liability for its own conduct, which the Court will reference as "Air Products individually." (*See* Doc. 131.)

[3] The William Powell Company and Foster Wheeler Energy Corp. also have pending summary judgment motions, but the Court has requested supplemental briefing as to those motions and the claims against these defendants are not addressed by this Order. (*See* Doc. 162.) The Court previously granted uncontested motions for summary judgment in favor of several defendants. (*See* Docs. 156, 158, 160, 161.)

there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant has the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant satisfies its burden, the burden shifts to the non-movant to produce admissible evidence from which the finder of fact might return a verdict in his favor. *Liberty Lobby*, 477 U.S. at 257.

The moving defendants principally challenge the plaintiffs' evidence of exposure and causation as a general matter without distinguishing between the causes of action. In a case where the plaintiff developed asbestosis allegedly as a result of exposure to asbestos, the North Carolina Supreme Court held that the plaintiff "must demonstrate that he was actually exposed to the alleged offending products." *Wilder v. Amatex Corp.*, 314 N.C. 550, 553-54, 336 S.E.2d 66, 68 (1985). The Fourth Circuit has held that the plaintiff in an asbestosis case "must present 'evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.'" *Jones v. Owens-Corning Fiberglas Corp. & Amchem Prods., Inc.*, 69 F.3d 712, 716 (4th Cir. 1995) (applying *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986), to North Carolina case). This is known as the "*Lohrmann* test" or the "frequency, regularity, and proximity test."

Air Products as successor to Catalytic also contends that it cannot be liable because there is no evidence of duty. (Doc. 126 at 7-9.) Ingersoll-Rand makes a statute of repose argument unrelated to the elements of any cause of action.

## Analysis

Because the evidence varies from defendant to defendant, the Court will address the motions of each defendant separately.

I.       **Air Products and Chemicals, Inc., as Successor to Catalytic, (Doc. 125)**

As a threshold issue, Air Products contends that Delaware law applies, while the plaintiffs contend that North Carolina law applies.[4] Both parties agree that North Carolina choice of law rules apply. *See Imperial Cas. & Indem. Co. v. Radiator Specialty Co.*, 862 F. Supp. 1437, 1440 (E.D.N.C. 1994), *aff'd*, 67 F.3d 534 (4th Cir. 1995). North Carolina follows the rule of *lex loci*, applying in tort actions the law of the state where the injury occurred. *Harco Nat'l Ins. Co. v. Grant Thornton LLP*, 206 N.C. App. 687, 692, 698 S.E.2d 719, 722-23 (2010) (citing *Boudreau v. Baughman*, 322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988)). Specifically, "the tort is deemed to have occurred where the last event necessary to render the actor liable takes place." *Jordan v. Shaw Indus., Inc.*, Nos. 6:93CV542, 6:93CV543, 6:93CV544, 6:93CV545, 1996 WL 1061687, at *4 (M.D.N.C. Aug. 13, 1996), *aff'd*, 131 F.3d 134 (4th Cir. 1997).

The plaintiffs contend that Catalytic and its agents were negligent in performing maintenance on asbestos or asbestos-containing products at the Getty refinery and in employing individuals to do such work, causing Mr. Logan's mesothelioma and death. It is axiomatic that some injury is required to recover for personal injury, and Air Products does not contend that Mr. Logan had a cause of action for mere exposure to asbestos. Nor does Air Products dispute that Mr. Logan was diagnosed with mesothelioma and died in North Carolina. Because the development of the disease was the last event necessary to give rise to a cause of action, and because the undisputed evidence shows that this occurred in North Carolina, North Carolina law applies.

---

[4] The other moving defendants all either contend North Carolina law applies or assume it applies without discussion.

4

On the merits, Air Products contends that no reasonable jury could conclude that Catalytic's negligence caused Mr. Logan's mesothelioma because the plaintiffs have not produced evidence that Catalytic was responsible for any asbestos-containing product that caused Mr. Logan's injury and because Getty, not Catalytic, controlled Mr. Logan's work site. In other words, Air Products contends that there is no evidence to support the duty and proximate cause elements of the plaintiffs' negligence claims. *See, e.g.*, *Stojanik ex rel. Estate of Woodring v. R.E.A.C.H. of Jackson Cnty., Inc.*, 193 N.C. App. 585, 589, 668 S.E.2d 786, 788 (2008) (listing elements of negligence).

Air Products contends that Getty, not Catalytic, was in charge of the worksite and Catalytic's employees and that Catalytic is therefore not responsible for the acts of its employees. First, there is a factual dispute over who was responsible for Catalytic's employees and their work. The plaintiffs have produced evidence that Catalytic supervisors exercised control over the Catalytic employees working at Getty, (Doc. 127-1 at 89-90; Doc. 145-16 at 25-26, 50-51, 58-59, 65), and that Catalytic directed employee training, safety, and staffing of its employees working at Getty. (Docs. 145-5 to 145-9, 145-11.) They have also produced evidence that when Catalytic employees applied insulation, they spread asbestos dust and that Mr. Logan was regularly present when that occurred. (Doc. 127-1 at 89-90.) Indeed, the evidence that Air Products cites in support of its contention that Getty maintained control over the asbestos-related products is deposition testimony which indicates that both Getty and Catalytic foremen exercised control over the Catalytic insulators. (*See* Doc. 127-1 at 44-45, 51, 83, 89-90.) This is sufficient evidence from which a reasonable jury could find that Catalytic had a duty to Mr. Logan.

5

Second, even assuming Getty could be held liable for negligence of Catalytic's employees, Air Products has not explained how this precludes Catalytic's liability. Air Products has cited no case for the proposition that an independent contractor can avoid responsibility for the negligence of its employees by passing off day-to-day responsibility for their work tasks. Indeed, "[t]he law imposes upon every person who enters upon an active course of conduct the positive duty to exercise ordinary care to protect others from harm and calls a violation of that duty negligence." *Davidson & Jones, Inc. v. Cnty. of New Hanover*, 41 N.C. App. 661, 666, 255 S.E.2d 580, 584 (1979); *see also Thrift v. Food Lion, Inc.*, 336 N.C. 309, 442 S.E.2d 504 (1994), *rev'g for reasons stated in dissent* 111 N.C. App. 758, 766, 433 S.E.2d 481, 486 (1993) (Greene, J., dissenting) (noting that test for liability of independent contractor in action against it and employer "requires application of general principles of negligence, that is, all persons are held to a standard of reasonable care for the protection of third parties who may foreseeably be endangered by a negligent act").

The plaintiffs have also put forth sufficient evidence to create a genuine issue of material fact as to proximate cause. The plaintiffs have presented evidence that Mr. Logan was present when Catalytic employees removed and installed pipe covering insulation, that these tasks produced high levels of asbestos dust, (Doc 127-1 at 32-33, 90), and that insulating work was done frequently in the summer and a bit less in the winter throughout Mr. Logan's employment. (*Id.* at 90.) The plaintiffs' expert testimony shows that asbestos exposure is the only known cause of mesothelioma, (Doc. 102 at 10, 21), and, specifically, that Mr. Logan's asbestos exposure was the sole cause of his mesothelioma, which caused his death. (Doc. 103 at 6.) This

is enough to support a reasonable inference of substantial causation under the *Lohrmann* test advocated by Air Products.[5] Thus, this motion should be denied.

 II.     **Air Products and Chemicals, Inc., Individually, (Doc. 131)**

Air Products moves for summary judgment on the ground that the plaintiffs have offered no evidence to support a claim against Air Products individually. Air Products points out that there is no evidence that Air Products itself provided any products or services at the Getty refinery to which Mr. Logan would have been exposed. Thus, Air Products, individually, has satisfied its initial burden.

The plaintiffs—the parties with the ultimate burden of proof—have not responded to Air Products' individual motion. They have not pointed the Court to any evidence which would support a verdict in their favor against Air Products on any basis other than as successor to Catalytic or otherwise set forth specific facts illustrating genuine issues for trial. *See Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008); *see also* L.R. 7.3(f), (k). Accordingly, the Court will grant this motion.

 III.    **Crane Company, (Doc. 128)**

Crane contends that the plaintiffs cannot establish causation under the *Lohrmann* standard. Specifically, Crane contends that there is no evidence that Mr. Logan was exposed to asbestos-containing Crane valves and that, even if he was, the evidence is that the source of asbestos was non-Crane gaskets and packing, not the Crane valves themselves.

---

[5] The moving defendants contend that the Court should apply the *Lohrmann* test to evaluate causation. The plaintiffs contend that a more relaxed standard is appropriate in mesothelioma cases like this one. The Court need not resolve this dispute as to the defendants whose motions are resolved in this Order, as the plaintiffs satisfy the *Lohrmann* test advocated by the defendants.

7

The plaintiffs have presented deposition testimony from Mr. Logan's coworker, Louis Pederson, that Crane valves were used more than any other valve at the refinery and that they made up at least fifty percent of the valves used at the factory. (*See* Doc. 127-1 at 15-16, 78.) New crane valves came from Crane with asbestos-containing gaskets and packing. (*Id.* at 16-17.) Mr. Logan worked on valves throughout the refinery daily, and Crane valves were dispersed throughout the refinery. (*Id.* at 17, 78.) While Mr. Pederson could not recall a specific instance that Mr. Logan worked on a Crane valve, he testified definitively that he personally observed Mr. Logan supervise maintenance of Crane valves and that Mr. Logan worked on hundreds of new Crane valves over a period of twenty years. (*Id.* at 17.) This is sufficient evidence of frequency, regularity, and proximity of exposure to Crane valves.

Crane contends that Mr. Pederson's deposition testimony is insufficient because unlike Mr. Logan, Mr. Pederson did not work at the refinery during the first eighteen months of its operation and thus he had no personal knowledge of whether the Crane valves he saw were original Crane valves as opposed to valves with replacement gaskets. However, Crane has not pointed to evidence showing that the original gaskets would have been replaced with non-Crane gaskets earlier than eighteen months after their installation, whereas Mr. Pederson testified that Mr. Logan worked on hundreds of original gaskets on new Crane valves for approximately twenty years, and that he personally observed Mr. Logan working on brand new Crane valves. (*Id.* at 17.) Mr. Pederson testified that he had extensive experience at the Getty refinery for thirty-seven years, (*id.* at 3-4), and his testimony about the operation of the refinery generally would support the inference that he knew a new valve when he saw one.

Viewing the facts in the light most favorable to the plaintiffs, the plaintiffs have met the *Lohrmann* standard as to asbestos-containing gaskets and packing supplied by Crane. The Court

8

need not reach the question of whether the plaintiffs could recover from Crane based on asbestos in the replacement gaskets and packing not manufactured or supplied by Crane. *See, e.g.*, *Mullis v. Armstrong Int'l, Inc.*, Civil Action No. 2:12-60155-ER, 2013 WL 5548841, at *1 (E.D. Pa. Aug. 20, 2013).

**IV.     Ingersoll-Rand Company, (Doc. 135)**

Ingersoll-Rand advances two arguments in favor of summary judgment. First, Ingersoll-Rand contends that there is insufficient evidence of causation, and second, Ingersoll-Rand contends that the plaintiffs' claims are barred by North Carolina's statute of repose.

The plaintiffs again rely on Mr. Pederson, who testified that Ingersoll-Rand made the asbestos-containing compressors at the Getty refinery. (Doc. 127-1 at 23.) There were six Ingersoll-Rand compressors in the "north area," and "a lot more" in the "south end." (*Id.* at 24.) Mr. Pederson testified that Mr. Logan supervised the maintenance of these compressors during "shutdowns," which occurred over thirty-day periods, during which Mr. Logan had occasion to breathe the asbestos dust created. (*Id.* at 12, 24-27.) He further testified that Mr. Logan worked on the compressors approximately twenty times over his career. (*Id.* at 27-28.) Viewing Mr. Pederson's testimony in the light most favorable to the plaintiffs, a reasonable jury could conclude that Mr. Logan worked on asbestos-containing Ingersoll-Rand products for one month most years over the span of his thirty-year career. This is sufficient evidence of frequency, regularity, and proximity under the *Lohrmann* test to survive summary judgment.

Ingersoll-Rand cites *Yates v. Air & Liquid Sys. Corp.*, No. 5:12-CV-752-FL, 2014 WL 348301, at *6 (E.D.N.C. Jan. 31, 2014), in support of its contention that this evidence is insufficient. This case is distinguishable. The evidence in *Yates* was that the plaintiff worked "around" the defendant's pumps; there was no indication of how often he did so or how close to

9

the product he worked. *Id.* The evidence here is also stronger than in *Lohrmann*, where the only evidence was the plaintiff's testimony that he was exposed to the asbestos-containing product on ten to fifteen occasions of between one and eight hours. 782 F.2d at 1163.

Nor are the plaintiffs' claims barred by the statute of repose. *See* N.C. Gen. Stat. § 1-46.1. Ingersoll-Rand concedes that the Fourth Circuit has foreclosed this defense by holding that the products liability statute of repose does not apply to claims arising from disease. *See Hyer v. Pittsburgh Corning Corp.*, 790 F.2d 30, 32-34 (4th Cir. 1986) (addressing predecessor of § 1-46.1, § 1-50(6)). The Court is bound by that holding and, in any event, sees no reason to depart from it; the North Carolina legislature has not amended the products liability statute of repose to include diseases in the almost-thirty years since *Hyer*. *See, e.g.*, *Jones v. United States*, 751 F. Supp. 2d 835, 839 (E.D.N.C. 2010). Accordingly, the Court will deny Ingersoll-Rand's motion for summary judgment.

**Conclusion**

The plaintiffs have produced evidence of frequency, regularity, and exposure to asbestos sufficient to satisfy the *Lohrmann* test as to defendants Crane, Ingersoll-Rand, and Air Products to the extent those claims are based on the conduct of Catalytic. The plaintiffs have further produced evidence that defendant Air Products had a duty to the plaintiff. The claims against Ingersoll-Rand are not barred by the statute of repose. The claims against Air Products based on its own conduct are dismissed, as the plaintiffs have not identified any evidence that Air Products exposed Mr. Logan to asbestos.

For the reasons stated, it is **ORDERED** that:

1. The motions of Air Products, as successor to Catalytic, (Doc. 125), Crane Company, (Doc. 128), and Ingersoll-Rand, (Doc. 135), are **DENIED**.

2. The motion of Air Products, individually, (Doc. 131), is **GRANTED**. The plaintiffs' claims against Air Products, individually, are dismissed with prejudice.

This the 7th day of August, 2014.

                                            UNITED STATES DISTRICT JUDGE