IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JOSEPH LOGAN, Personal Representative of the Estate of Ralph Logan, Deceased, and Lois Logan, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:12-CV-1353 |
| AIR PRODUCTS AND CHEMICALS, INC., et al., | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER
## AS TO DEFENDANT THE WILLIAM POWELL COMPANY

Catherine C. Eagles, District Judge.

Ralph Logan, the plaintiffs' decedent, worked at a Getty Oil refinery for thirty years where he was exposed to asbestos on a regular basis. The defendant, The William Powell Company, sold valves used at the refinery. Mr. Logan developed mesothelioma, a cancer caused by exposure to asbestos, which later caused his death. His estate and wife have sued several entities, contending that their products and conduct caused Mr. Logan's mesothelioma. Defendant William Powell has moved for summary judgment.[1] Because the plaintiffs have not offered sufficient evidence to prove that Mr. Logan was

---

[1] The Court previously granted several defendants' uncontested motions for summary judgment and denied several other defendants' motions for summary judgment. (*See* Docs. 156, 158, 160, 161, 165.) The Court held open summary judgment motions as to William Powell and another defendant, Foster Wheeler Energy Corporation, for the parties to file supplemental briefing. (Doc. 162.)

actually exposed to asbestos from a William Powell product, the Court will grant the motion.

**Background**

The facts as stated are either undisputed or viewed in the light most favorable to the plaintiffs, the non-moving party.[2] Almost all relevant evidence comes from the testimony of Louis Pederson, Mr. Logan's former co-worker.

Mr. Logan worked as a maintenance supervisor at a Getty Oil refinery in Delaware from 1956 to 1986. (Doc. 127-1 at 11-12, 15.) The refinery covered 5,000 acres and included 980 miles of piping. (Doc. 127-1 at 170.) All asbestos-containing equipment was outside. (Doc. 127-1 at 171.)

Many types of equipment at the refinery contained asbestos, and maintenance on this equipment would often involve removing and replacing asbestos-containing components. (*See, e.g.*, Doc. 127-1 at 22-26, 30-32, 35-41, 46-49, 62-66.) For example, some equipment that stored and carried liquids contained asbestos-containing gasketing material because it "did a good job of . . . sealing any leaks off." (Doc. 127-1 at 22-24.) If a pump or valve had a leak, workers would shut down the equipment, open the pump or valve, and replace the asbestos-containing components. (Doc. 127-1 at 22-23.) Workers would scrape the equipment to remove the old gasketing material, creating asbestos dust. (*See* Doc. 127-1 at 24-26, 31-32.) During the later cleanup process,

---

[2] Docket references for non-deposition evidence are to the docket number and page number appended by the CM-ECF system. For deposition evidence, page numbers refer to the actual page numbers of the deposition transcript.

asbestos dust was "hard to avoid" and would get on employees' clothes, shoes, and hands. (Doc. 127-1 at 38.)

Mr. Logan's responsibilities as maintenance supervisor required him to be present when workers opened and serviced equipment and valves and replaced asbestos-containing gasketing material, insulation, and packing. (Doc. 127-1 at 15-19, 22-28, 35-48.) This maintenance work occurred on a "daily basis," (Doc. 127-1 at 39), and Mr. Logan would "be right there" when workers serviced equipment to check for damage and estimate how long maintenance would take. (Doc. 127-1 at 17-18.) Early in the refinery's operation, Mr. Logan would do "hands-on work" himself and was generally "into everything." (Doc. 127-1 at 15.) During big shutdowns of the refinery, Mr. Logan would handle small parts like gaskets and valves and carry them to job sites. (Doc. 127-1 at 28-29.)

Mr. Pederson personally observed Mr. Logan supervise workers removing asbestos-containing components on many types of equipment, including Pacific pumps and valves, (Doc. 127-1 at 27-28, 74), Ingersoll-Rand pumps and compressors, (Doc. 127-1 at 46-47, 102), and Crane valves. (Doc. 127-1 at 62-65.) He also saw the dusty environment created by this work. (Doc. 127-1 at 27-28, 47, 66, 75-77, 102-03.)

William Powell made valves, some of which contained asbestos. (*See* Doc. 127-1 at 53, 81-84; Doc. 144-9 at 30-32, 79-82.) William Powell also sold asbestos-containing gaskets and packing as replacement parts for its valves. (*See* Doc. 144-9 at 43-45.) There were approximately 100,000 valves installed at the Getty refinery. (Doc. 127-1 at 61, 286-87.) While most valves were made by other manufacturers, roughly ten percent

3

were Powell valves.³ (Doc. 127-1 at 81-82.) Mr. Pederson could not say whether Powell valves were originally installed at the refinery. (Doc. 127-1 at 82.) When asked whether he recalled a specific instance of Mr. Logan supervising the repair of a Powell valve, Mr. Pederson said that "if [Powell] valves were being repaired, . . . [Mr. Logan] would have been around," (Doc. 127-1 at 320-21), but that such repair was "infrequent." (Doc. 127-1 at 82.) Similarly, when asked if Mr. Logan was personally present to breathe the dust created by work on Powell valves, Mr. Pederson responded, "If he was working there, yes, he would be around it." (Doc. 127-1 at 83-84.)

## Overview of Issues

The plaintiffs assert the following causes of action arising from Mr. Logan's alleged exposure to asbestos-containing valves made by William Powell: negligence, gross negligence, wrongful death, loss of consortium, breach of implied warranty, fraud, and failure to warn. (Doc. 73.) William Powell has moved for summary judgment. (Doc. 133.)

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). The movant has the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325

---

³ Mr. Pederson offered a "guesstimate" that ten percent of the valves at the refinery were Powell valves. (Doc. 127-1 at 316-17.) As a "guesstimate," this testimony is insufficient to establish that, in fact, exactly ten percent of the valves were Powell valves. However, given Mr. Pederson's testimony that there were 100,000 valves on site, his "guesstimate" that ten percent were Powell valves is sufficient to support a finding that there was a large number of Powell valves at the refinery.

(1986). Once the movant satisfies its burden, the burden shifts to the non-movant to produce admissible evidence from which the fact-finder might return a verdict in his favor. *Anderson*, 477 U.S. at 257.

William Powell challenges the plaintiffs' evidence of exposure and causation as to all causes of action. In cases arising under North Carolina law, a plaintiff who develops asbestosis allegedly as a result of exposure to asbestos "must demonstrate that he was actually exposed to the alleged offending products." *Wilder v. Amatex Corp.*, 314 N.C. 550, 553-54, 336 S.E.2d 66, 68 (1985). It is not enough to show that a defendant's products were on site. *Id.* at 554, 336 S.E.2d at 68. Neither party has suggested that this rule would not apply in a case where the plaintiff or her decedent developed mesothelioma as a result of exposure to asbestos.

The Fourth Circuit has held that the plaintiff in an asbestosis case "must present 'evidence of exposure to a specific product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked.'" *Jones v. Owens-Corning Fiberglas Corp. & Amchem Prods., Inc.*, 69 F.3d 712, 716 (4th Cir. 1995) (quoting and applying *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1162-63 (4th Cir. 1986), to North Carolina case). This is known as the "*Lohrmann* test" or the "frequency, regularity, and proximity test," and courts have applied it routinely for many years to evaluate proximate cause in asbestos cases arising under North Carolina law.[4] The

---

[4] *See, e.g.*, *Haislip v. Owens-Corning Fiberglas Corp.*, 86 F.3d 1150, at *2 (4th Cir. 1996) (per curiam) (unpublished) (applying *Lohrmann* to North Carolina case involving a plaintiff with mesothelioma); *Yates v. Air & Liquid Sys. Corp.*, No. 5:12-cv-752-FL, 2014 WL 4923603, at

5

plaintiffs contend that they meet the *Lohrmann* test and, in the alternative, that they meet a "relaxed *Lohrmann* test" applicable because Mr. Logan had mesothelioma, not asbestosis. (Doc. 144 at 9-12.)

**Analysis**

The plaintiffs have presented no testimony or evidence from anyone who personally witnessed Mr. Logan working on or near any Powell valves. The plaintiffs contend that they have proffered sufficient circumstantial evidence, all from Mr. Pederson's testimony, from which the fact-finder can infer that Mr. Logan was exposed to asbestos from Powell valves. (Doc. 144 at 12.) Mr. Pederson's testimony establishes that many Powell valves were located throughout the refinery, that Powell valves made up a small portion of the valves used at the refinery, (Doc. 127-1 at 81-82), and that Mr. Logan's responsibilities generally required him to be present when workers serviced Powell valves. (Doc. 127-1 at 17-25.) Mr. Pederson testified that Mr. Logan "would have" been around whenever refinery employees serviced equipment containing Powell valves, (Doc. 127-1 at 320-21), but that such repair was "infrequent." (Doc. 127-1 at 82.)

This evidence is insufficient to prove actual exposure under *Wilder*. *See Wilder*, 314 N.C. at 553-54, 336 S.E.2d at 68 ("[P]laintiff's evidence must demonstrate that he was actually exposed to the alleged offending products."). Viewing the evidence in the

---

*22-23 (E.D.N.C. Sept. 30, 2014) (applying "the *Jones/Lohrmann* test" to North Carolina case involving a plaintiff with mesothelioma); *see also Jandreau v. Alfa Laval USA, Inc.*, No. 2:09-91859-ER, 2012 WL 2913776, at *1 n.1 (E.D. Pa. May 1, 2012) (applying *Lohrmann* to North Carolina case involving a plaintiff with mesothelioma and predicting that the North Carolina Supreme Court would adopt the *Lohrmann* test).

light most favorable to the plaintiffs, the fact-finder could do no more than speculate that Mr. Logan was exposed to asbestos from Powell valves. *See Lee v. Stevens*, 251 N.C. 429, 433-34, 111 S.E.2d 623, 626-27 (1959) (concluding that the plaintiff's evidence of proximate cause rested on speculation and was insufficient to create a jury question); *Gibson v. Ussery*, 196 N.C. App. 140, 143-44, 675 S.E.2d 666, 668-69 (2009) (same).

The plaintiffs maintain that Mr. Pederson testified to personally observing Mr. Logan around workers replacing Powell valves and that Mr. Logan would breathe the dust created. (Doc. 144 at 3, 10.) However, a review of the deposition testimony cited shows that the plaintiffs have overstated Mr. Pederson's testimony. Mr. Pederson said he "could have" observed Mr. Logan around workers repairing Powell valves, but could not identify any specific instances. (Doc. 127-1 at 82.) And Mr. Pederson said "if" Mr. Logan was present during repair work, he "would" be around the dust created. (Doc. 127-1 at 84.) This cannot be read as testimony that Mr. Pederson personally observed Mr. Logan around workers replacing Powell valves or that the Powell valves at the refinery contained asbestos.

The plaintiffs next rely on *Jones* to support their contention that their circumstantial evidence of Mr. Logan's asbestos exposure from Powell valves is sufficient to defeat William Powell's motion. (Doc. 144 at 9-10.) The evidence in *Jones* was much stronger than that presented here by the plaintiffs. In *Jones*, two co-workers testified that: (1) they worked with the plaintiffs for more than twenty years; (2) "during that time, they were all exposed to, and inhaled, asbestos dust on a daily basis"; and (3) they worked with the plaintiffs with and around the defendant's asbestos-containing

7

products on a regular basis. *Jones*, 69 F.3d at 716. The defendant did not dispute this evidence, and the Fourth Circuit found it sufficient to establish that the plaintiffs were exposed to asbestos from the defendant's products. *See id.* at 718. Contrary to the plaintiffs' evidence here, the *Jones* plaintiffs presented eyewitness testimony of regular exposure to the defendant's asbestos products. Here, the evidence is circumstantial, indirect, and weak: Mr. Pederson did not usually work directly with Mr. Logan,[5] Mr. Logan "would" have been around asbestos dust "if" he was present, and Mr. Logan's work around Powell valves was "infrequent." Even when taken together with the plaintiffs' evidence of Mr. Logan's general job duties and the large number of Powell valves on site, this is insufficient to draw an inference of exposure from Powell valves.

The plaintiffs contend that because Mr. Logan developed mesothelioma, and not asbestosis, the Court should apply a "relaxed *Lohrmann*" test.[6] (Doc. 144 at 11-12.) The Court need not address this contention because such a relaxed test would arguably apply only to the causation question, and the plaintiffs have not proven probable exposure as a

---

[5] Mr. Pederson and Mr. Logan worked on the same team for only one year, but saw each other daily for roughly nine years when Mr. Logan supervised an area that included the unit Mr. Pederson supervised. (Doc. 127-1 at 168, 173.) Otherwise, Mr. Pederson often observed Mr. Logan during shutdowns as part of training new employees or because he was just "interested in what was going on" during shutdowns. (Doc. 127-1 at 173-74.) In any event, this working arrangement does not approach the closeness and duration of that between the *Jones* plaintiffs and their witnesses. *See Jones*, 69 F.3d at 716.

[6] *See Mullis v. Armstrong Int'l, Inc.*, No. 2:12-60155-ER, 2013 WL 5548838, at *1 n.1 (E.D. Pa. Aug. 20, 2013) (collecting cases applying a "modified or adjusted" *Lohrmann* test in mesothelioma cases and rejecting them as inconsistent with a prediction that the North Carolina Supreme Court would adopt the *Lohrmann* test); *see also Ford Motor Co. v. Boomer*, 736 S.E.2d 724, 728-33 (Va. 2013) (rejecting the "substantial factor" test in *Lohrmann* under Virginia law in mesothelioma case).

precursor to the causation question. *See Tragarz v. Keene Corp.*, 980 F.2d 411, 420-21 (7th Cir. 1992) (indicating that plaintiffs who fail to first prove probable exposure necessarily fail to prove that exposure was a proximate cause of the resulting disease).

There may be cases in which the evidence of frequency, duration, and proximity will be sufficient to support an inference of causation in a mesothelioma case, but insufficient in an asbestosis case. *See Wehmeier v. UNR Indus., Inc.*, 572 N.E.2d 320, 337 (Ill. App. Ct. 1991) (noting the different amounts of exposure required for the two diseases and establishing a case-by-case approach). But *Wilder* makes clear that the first question is whether the plaintiff can prove actual exposure. *See Wilder*, 314 N.C. at 553-54, 336 S.E.2d at 68. As noted *supra*, the circumstantial evidence against William Powell is insufficient to prove by the greater weight of the evidence anything beyond the fact that there were William Powell valves on site and anything beyond Mr. Logan's casual or minimal contact with the valves. *See Jones*, 69 F.3d at 716. The *Lohrmann* test cannot be modified to such an extent that the plaintiffs do not have to prove actual exposure to asbestos from the defendant's product; that would be inconsistent with *Wilder*, a North Carolina Supreme Court case almost directly on point.

For these reasons, it is **ORDERED** that the motion for summary judgment by the defendant The William Powell Company, (Doc. 133), is **GRANTED**.

This the 7th day of November, 2014.

UNITED STATES DISTRICT JUDGE